IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 13, 2004

## KEVIN TAYLOR v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 95-C-1907     Seth Norman, Judge**

_____

**No. M2003-02982-CCA-R3-CO - Filed December 13, 2004**

_____

The petitioner appeals the trial court's denial of his petition for writ of error *coram nobis*. Particularly, he avers that the court abused its discretion in summarily dismissing his petition solely on the lack of credibility of the affiant supporting the petition. We remand the matter to the trial court for an evidentiary hearing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Remanded for Evidentiary Hearing**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and DAVID H. WELLES, J., joined.

Kevin Taylor, Only, Tennessee, *Pro Se*.

Paul G. Summers, Attorney General and Reporter; Richard H. Dunavant, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Dan Hamm, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Facts and Procedural History**

Following a jury trial, the petitioner, Kevin Taylor, was convicted of felony murder and attempted especially aggravated robbery; he received an effective sentence of life imprisonment. On direct appeal, this Court affirmed the judgment of the trial court. State v. Kevin Taylor, No. 01C01-9707-CR-00263, 1998 Tenn. Crim. App. LEXIS 1272 (Tenn. Crim. App., Nashville, Dec. 9, 1998), perm. to app. denied (Tenn. 1999).

That opinion recites a succinct summary of the facts underlying the convictions:

On December 26, 1994, the 20-year old victim, Joshua Sabine, drove to Nashville with James DeMoss, Rex Clayton and 15-year old Brian Binkley. The victim was driving, and Binkley was in the front passenger seat. DeMoss and Clayton were in the rear seat. The victim intended to purchase some wheel rims in Nashville.

The victim drove near a housing project in West Nashville where Cordell Sykes, the co-defendant, asked the victim if he had come for the rims. Sykes requested that they come back in approximately 30 minutes.

Upon their return Sykes approached the driver's door and advised the victim that he was unable to get the wheel rims. The defendant approached the passenger door and endeavored to sell drugs to the car occupants. Binkley advised him they were not interested in purchasing drugs, and the defendant walked around to the driver's door. Sykes then reached into the vehicle to place the gear shift in "park" and struggled with the victim. At that time another person began shooting into the vehicle. Binkley testified that both of Sykes' hands were inside the vehicle at the time of the shooting, and Sykes did not have a weapon.

Regina Tyson and Tara Williams were together at the scene at the time of the shooting. Tyson testified she observed the defendant and Corey Gooch walk by her. The defendant took Gooch's baseball cap, placed it upon his head and lowered it just above his eyebrows. The defendant also slid a gun into his black leather jacket and stated that he was "going to show them how to do a jack move." She explained that "jack move" means robbing someone.

Tyson further testified that both Sykes and the defendant were at the Blazer when she heard gunshots. She then observed Sykes flee while the defendant simply walked across the street, got in his car and drove away. The only person she saw with a gun that night was the defendant.

Corey Gooch testified that he was with the defendant on the night in question. He observed the defendant at the vehicle and saw Sykes on the driver's side struggling with the driver. He also observed the defendant at the vehicle when he heard the shots but was unable to determine who actually fired the shots. Gooch saw the defendant later that evening, and the defendant stated there was a radio in the vehicle but things, "didn't work out." Gooch assumed the defendant was trying to get the radio.

The victim was shot in the hail of gunfire. Binkley grabbed the steering wheel, pushed the accelerator and sped from the scene. The parties drove to a convenience store and called 911. The victim subsequently died from the gunshot wounds.

The forensic pathologist testified that the victim had three gunshot wounds; namely, one to the left part of the back, one to the back of the left hand and one to the upper left arm. Since the back wound had "stippling," that shot was fired from a distance of less than three feet.

The defendant was arrested several months after the incident. In his initial statement to the police, he stated he was across the street when the shooting began. After further interrogation, he admitted approaching the passenger side trying to sell drugs and then going around to the driver's side where he stood beside Sykes. He told the officers that Sykes was the person who shot the victim. The defendant denied to the officers that he was wearing a black leather jacket. This was contrary to the trial testimony of Binkley, Tyson and Gooch.

The defense offered no evidence at trial.

Thereafter, the petitioner filed a petition for post-conviction relief, which was denied by the trial court. This Court likewise affirmed that judgment. Kevin Taylor v. State, No. M2000-01414-CCA-R3-PC, 2001 Tenn. Crim. App. LEXIS 634 (Tenn. Crim. App., Nashville, Aug. 17, 2001), perm. to appeal denied (Tenn. 2003).

On September 26, 2003, the petitioner filed a *pro se* petition for writ of error *coram nobis*, averring that newly discovered evidence merited a new trial. In support of his petition, the petitioner submitted the affidavit of eyewitness James DeMoss ("DeMoss"), who could not be located to testify at trial. DeMoss stated in his affidavit that he was present in the vehicle with the victim at the time of the murder and that the petitioner was not the gunman. He further explained that, although he wished to testify at trial, he had not been contacted by either party and was unaware that the trial had commenced until well after it had concluded. The trial court summarily dismissed the petition, citing several reasons for its finding, including: the affiant's lack of credibility, the cumulative and contradictory nature of the proffered evidence, and the petitioner's lack of diligence in failing to present the evidence at the appropriate time. The petitioner now appeals to this Court.

**Analysis**

The writ of error *coram nobis* is a decidedly narrow remedy and is only appropriate when the issue presented was either not addressed, or could not have been addressed at trial because it was in some way hidden or unknown, and would have prevented the judgment rendered had it been known to the court. See Tenn. Code Ann. § 40-26-105 (2003); State v. James Hooper, No. 03C01-9701-CR-00035, 1998 Tenn. Crim. App. LEXIS 271 (Tenn. Crim. App., Knoxville, March 6, 1998); State v. Hart, 911 S.W.2d 371 (Tenn. Crim. App. 1995). Thus, the writ will lie for newly discovered evidence if the petition relates (1) the grounds and the nature of the newly discovered evidence; (2) why the admissibility of the newly discovered evidence may have resulted in a different judgment, had the evidence been admitted at the previous trial; (3) the petitioner was without fault in failing

to present the newly discovered evidence at the appropriate time; and (4) the relief sought by the petitioner.  Hart, 911 S.W.2d at 374-375.

In the case *sub judice*, the trial court determined, without an evidentiary hearing, that the evidence did not merit *coram nobis* relief.  Our supreme court has held that *coram nobis* claims are "singularly fact-intensive," and "are not easily resolved on the face of the petition and often require a hearing."  Harris v. State, 102 S.W.3d 587, 593 (Tenn. 2003).  In the instant matter, the court based its findings on facts outside the petition, looking to testimony elicited at the post-conviction hearing and statements allegedly made by the affiant to officers immediately after the victim was murdered.  In so doing, the court denied the petitioner the opportunity to subject the witness to the process of examination.  We conclude that an evidentiary hearing would allow the trial court to better gauge the credibility of the affiant; the effect, if any, that his testimony might have had on the jury's verdict; and if the petitioner was indeed at fault in failing to present the testimony to the tribunal at the appropriate time.  In sum, we hold that the trial court must delve more deeply into the facts surrounding the petition in order to make a sufficient determination of its merits.  Therefore, we remand this matter to the trial court for an evidentiary hearing on the *coram nobis* petition.

Statute of Limitations

On appeal, the State contends that the petition is outside the statute of limitations and is thus time-barred.  The statute of limitations for seeking a writ of error *coram nobis* is one year from the date the judgment becomes final.  Tenn. Code Ann. § 27-7-103 (2004).

In the present case, the trial court's judgment became final in May 1996; thus, the statute of limitations had long expired before the petitioner filed his petition in September 2003.  However, it is well-settled law that the statute of limitations applicable to writs of error *coram nobis* is an affirmative defense, which the State bears the burden of raising.  See Harris v. State, 102 S.W.3d 587 (Tenn. 2003); Sands v. State, 903 S.W.2d 297 (Tenn. 1995).  We note, however, that it appears from the record that summary dismissal precluded the State from raising the statute of limitations as a defense in the trial court.  Therefore, we conclude that the affirmative defense of the statute of limitations has not been waived; however, due to the lack of a record on this issue it is not cognizable on this appeal.

**Conclusion**

Based on the foregoing reasons, this matter is remanded to the trial court for an evidentiary hearing on the *coram nobis* petition and the statute of limitations pertaining thereto.


_____
JOHN EVERETT WILLIAMS, JUDGE


-4-